# Mary Lee Coal & Railway Co. *v.* Winn.

### *Foreclosure of Deed of Trust.*

|  97  | 495 |
| --- | --- |
| 118 | 625 |

|  97  | 495 |
| --- | --- |
| 137 | 241 |

1. *When beneficiaries under a trust deed not estopped.*—Beneficiaries under a trust deed do not estop themselves from asserting their rights under the trust by standing by allowing a railroad company to take possession of and construct a railroad over lands granted in trust to secure the payment of the grantor's debts, of which trust deed, the company had notice.

2. *When beneficiary under trust deed to secure debts releases her right to the trust property.*—When a beneficiary under a conveyance of land in trust to secure the payment of debts owing by the grantor, permits a railroad company, of which she and her husband were both stockholders to acquire by fee, a right of way over the lands embraced in the trust deed, and with her and her husband's knowledge, the husband being a director of such company, and as such director negotiating with the grantor for the purchase of such right of way, the purchase price of which was paid to such beneficiary to be a credit upon her debt secured by such trust deed, the beneficiary is charged with knowledge that the company believed it was acquiring the absolute title to the right of way, and by accepting the purchase price she releases her interest as beneficiary in the trust as to such way.

APPEAL from Chancery Court of Jefferson.
Heard before Hon. THOMAS COBBS.

SMITH & LOWE, for appellant, cited *N. & S. R. R. Co. v. Immigration Association,* 68 Ala. 48; *A. G. S. R. R. Co. v. S. & N. R. R. Co.,* 84 Ala. 570; *Forney v. Calhoun County,* 84 Ala. 215; *Bright v. Platt,* 32 N. J. Eq. 362; *Reed v. City of Cambridge,* 2 Mass. 427; 31 N. Y. Eq. 81; *The Bank of Auburn v. Roberts,* 44 N. Y. 203; *Sawyer v. Landus & Son,* 56 Iowa, 422; *Baldwin v. Hatchett,* 56 Ala. 461; 3rd Pomeroy's Equity, 1181-2; *Ketchum v. Creagh,* 53 Ala. 224; Freeman on Cotenancy and partition, Sec. 512; 22 Me. 287; *Aday v. Echols,* 18 Ala. 353; *Columbus & Western R. R. Co. v. Witherow,* 82 Ala. 190; *Jacksonville v. Adams,* 10 So. Rep. 465; *North Hudson R. R. Co. v. Booraem,* 28 N. J. Eq. 450; *Daws v. Corydore,* 16 Howard N. Y. Pr. 517; *Kennedy v. Milwaukee & St. Paul R. R. Co.,* 22 Wis. 518.

J. M. MARTIN, for MRS. H. N. WINN, appellee, cited 3 Brickell's Dig., pages 400, 548-49; 15 Amer. & Eng. Encyc.

[Mary Lee Coal & Railway Co. v. Winn.]

of Law, 818 ; 1 Jones on Mortgages, § 707; *Spencer v. Waterman*, 36 Conn.

GARRETT & UNDERWOOD, and WATTS & SON, for appellees, except Mrs. H. N. Winn, cited *Scott v. Cotton*, 91 Ala. 629 ; Code, 2346; *Canty v. Sandeford*, 37 Ala. 91; *Drake & Wife v. Glover*, 30 Ala. 382.

HEAD, J.—On December 24, 1886, Elwell Eastman and B. D. Smith, to secure four separate debts therein described, owing, respectively, to Helen N. Winn, Jessie H. Boyle, Mary L. Boyle and Robert E. Boyle, aggregating $22,533, executed to James J. Garrett a deed of trust to the lands described in the bill, with power of sale in default of payment of any of the secured debts.   Afterwards, the Mary Lee Coal and Railway Company was organized as a corporation under the general laws of this State, with power, among other things, to build and operate a railroad between certain terminal points and to buy, hold and sell lands.   This company desiring to construct its road, it became necessary to acquire a right of way over the said lands, and after negotiation it obtained from said Eastman and Smith, on July 30, 1889, their deed with general warranty, conveying to a trustee for the company, for the recited consideration of ten dollars, a certain described strip of and through said lands, for the purposes of such right of way.   By another deed, with like covenants, bearing date July 3, 1889, but acknowledged and alleged to have been executed on the 30th, they likewise conveyed to a trustee for the company, for the recited consideration of one hundred dollars, another strip of the land lying alongside the strip conveyed, as above stated, for a "railroad dummy line or street car line upon which cars may be propelled by horse, steam or electric power." On August 21, 1889, they also conveyed by deed, with like covenants, to a trustee for the company, for the recited consideration of five hundred dollars, certain other lots of said land, thirty-eight in number, described by numbers and blocks, according to a certain map.   These lots, it seems, were purchased as a requirement of the vendors, because of injury it was thought would be done to them by the location of the right of way through them.   In point of fact, there was an aggregate consideration of $2,367.00 paid by the company for these three purchases; and the same was paid, not to Eastman and Smith, but, with their consent, by the execution of its two notes therefor to said Helen N. Winn, maturing in the future, which notes were paid to her by the

company before maturity, and by her applied in payment *pro tanto* of the indebtedness owing her by Eastman and Smith and secured by the Garrett deed of trust, by entering the same as a credit upon the judgment at law, to which a portion of that indebtedness had been reduced. The railroad was at once constructed and put in operation, and is now in operation, upon the right of way so secured. The complainant, the trustee in said deed of trust, had begun foreclosure of the deed under the power contained therein, by advertising the land for sale on Sept. 1, 1890, but for certain special equities excusing the completion of that foreclosure, he exhibited the present bill on November 29, 1890, to enforce and administer the trust in the Chancery Court; the grantors, secured creditors and said Mary Lee Coal & Railway Company being made defendants. We need not specially notice these equities, for, in the course the litigation took, they present no question for our adjudication; except that among them it is alleged, that on the 30th day of August, 1890, the said Mary Lee Coal & Ry. Co. filed, in the Chancery Court below, against complainant and said secured creditors, its bill averring its purchases of the rights of way and lots aforesaid, and that the same were made with the knowledge of the creditors but not of complainant; averring the payment of the purchase-money to said Helen N. Winn, and the circumstances thereof, and that she agreed, in consideration thereof, that she would release the said rights of way and lots from said trust; and that the company claims to have the said rights of way and lots vested in it, with full and absolute title free from the trusts in favor of the beneficiaries and trustee under said deed of trust other than said Helen N. Winn; and that the deed be held as foreclosed so far as her interest is concerned by applying said $2,367 to the satisfaction of the trust deed so far as said rights of way and lots are concerned; that said bill prayed an injunction restraining the sale, which was granted and served, &c. The present bill avers that complainant did not know of or ratify said purchases, and, upon information and belief, that neither Jessie H. Boyle, Mary Lee Boyle nor Robert E. Boyle knew of or consented thereto, and further that Mary Lee and Robert were infants at the time.

Defendants, Smith, Eastman and H. J. Winn suffered decrees *pro confesso.* The other adult defendants (not including the railroad company) and the guardian *ad litem* of the infants answered, admitting the averments of the bill and consenting to the grant of the relief prayed. The Mary Lee Coal & Railway Company answered, setting up its purchases,

32—97

aforesaid, the payment of the purchase-money to Helen N. Winn and the circumstances thereof; the full knowledge of said Helen and the other creditors of the facts and circumstances of the purchases, and that she, at the time of accepting the company's notes, and collecting the same, promised and agreed, through her agent said H. J. Winn, that she would, in consideration of said payment, release the said rights of way and lots from the operation of said trust, and represented that she was fully authorized by the other creditors to make such release. It further sets up its expenditure. of a large sum of money in constructing and equipping the road, which is now in operation, and that it paid, for its purchases, largely more than the rights of way and lots were worth. The answer was made a cross-bill, with prayer that the company·be invested with the title to said rights of way and lots, and that the trust deed be treated as foreclosed, as to said Helen N. Winn, by applying the money received by her to the satisfaction of said trust deed in so far as its property is concerned, and decreeing to the other beneficiaries the proceeds of the sale of the other lands, or such portions thereof as in equity, they may be entitled to; and for general relief. The principal defendants answered, denying the averments of the cross-bill. The chancellor denied the relief prayed by the cross-bill and the company appeals. We do not think it can be seriously contended, under the pleadings and proof in this cause, that appellant has any equity growing out of its purchases, against any of the defendants, other than Mrs. Winn, which was not protected by the chancellor's decree. As to them, it is not, as contended by appellant's counsel, a case of the owners of land standing by and knowingly suffering a railroad company to take possession of their lands and build its road thereon in ignorance of the owner's right and belief of its own good title. These parties were merely invested with charges upon the land for the security of their debts; and the company, at the time of its purchases and construction of the road, actually knew of the existence of those charges, and, upon its own showing, attempted to guard against and protect them. They took no part whatever in the transactions, received no part of the money paid, were not consulted, gave no consents, and, we think, in no way estopped themselves from asserting the full measure of security afforded them by the trust deed in its inception. The issue is, then, between appellant and Mrs. Winn. If appellant's contention be true, it clearly has an equity against her which the chancellor's decree does not protect. According to that contention, Mrs. Winn and her

[Mary Lee Coal & Railway Co. v. Winn.]

husband, acting for her, participated in appellant's transactions, by which it acquired said rights of way and lots, assented to its purchases, received the purchase-money, knowing that, in what was done, appellant's purpose and effort were to acquire the absolute and unincumbered right of way, and believed it was acquiring such a right; and, indeed, that she, through her husband, agreed to the release of the property from the deed of trust, asserting authority therein to represent the other beneficiaries. The contention is denied by Mrs. Winn, who insists that she simply received the purchase-money when offered her, as a payment on her debt, without doing the acts, making the promises or posesssing the knowledge charged against her. The evidence must determine the issue.

Under the statutes regulating the exercise of the right of eminent domain, a railroad company duly chartered may acquire by condemnation an absolute and unincumbered right of way for its road over the lands of others. It is a principle of equity that if a mortgage exist upon the premises, and it is necessary to the security of the mortgagee, he is entitled to receive the condemnation money, to be applied to the mortgage debt, and is invested with appropriate remedies to enforce the right. Formerly, in this State, it was a condition precedent to the institution of proceedings to condemn, that the company make effort to acquire the right of way by agreement with the owners and parties interested. It is yet its privilege, if not moral duty, to effect such conventional arrangement when it can be done, without resorting to legal proceedings to condemn. The appellant undertook to pursue that course in the present instance. It agreed with the owners, Smith and Eastman, upon the location and price of the right of way and lots, and obtained their deeds. The rights of the beneficiaries in the trust were, in part at least, recognized, and the purchase-money paid to one of them, Mrs. Winn. The evidence shows that the full value, and more, of an absolute and unincumbered fee in the property purchased, was paid for it, and deeds with general warranty executed. The company then intended to build and equip its road at once, for permanent operation, involving an outlay of large sums of money. Taking these undisputed facts, to say nothing of evidence to which reference will presently be made, we think it can not well be doubted that the company's intent, purpose and effort were, throughout, to acquire an absolute and unincumbered right of way, and believed, when it gave its notes to Mrs. Winn and paid the same, that its

efforts accomplished that end. Did Mrs. Winn know, or was she in law charged with knowledge, of such purpose, effort and belief, when she received the notes and collected and appropriated the purchase-money? Pertinent to this inquiry, we state some other undisputed circumstances : Mrs. Winn was a large stockholder in the company. Her husband, said H. J. Winn, represented her in all stockholders' meetings, and generally in her transactions with the company, though did not sign her name to papers. He was also a stockholder ; a member of the board of directors and secretary of the company, and was entirely familiar with the acts and operations of the stockholders and directors. As secretary, he made the negotiations with Smith and Eastman and took part in the conclusion of the purchases, and, we assume, received and kept the deeds. He was well acquainted with the land ; knew, as well as any one could, its value ; agreed with Smith and Eastman on the price, and therefore knew the company was paying its full value. He knew of the company's purpose to build and equip the road, at large expense, for, as director and secretary, he shared that purpose himself, and knew the other directors did. Representing his wife, he agreed to take, and did take for her, the company's notes for the purchase-money ; surrendered them to her and procured her to enter the credit upon the judgment. Mrs. Winn's testimony shows that when she received the company's notes, which she says she collected some six months afterwards, she was "informed that this money was in payment for the right of way over the land sold to Smith and Eastman"; and further that she had "heard in a general way of the sale but knew nothing of the particulars." J. A. Montgomery, the then president, and G. W. West, a director, testify, without contradiction, that the matter was discussed in the office of the company on a great many occasions with Helen N. Winn, who about the time this trade was made, came to the office almost every evening to walk or drive home with her husband; and it was discussed in her presence. In view of this history, we think it would be injustice to H. J. Winn and wife to hold that they did not fully realize that the company, in what occurred, intended to acquire and believed it was acquiring, a good title to its right of way.

Mrs. Winn, by accepting the purchase-money for the property, charged with such knowledge, must be held to have released to appellant her charges, as a beneficiary in the trust, upon the rights of way and lots. We reach this conclusion without discussing the evidence wherein there is

[Mary Lee Coal & Railway Co. v. Winn.]

conflict. We have considered that evidence and find nothing in it, which, in our opinion, weakens the force of the undisputed facts which we have applied. Montgomery, West and Ryan, officers and directors of the company, corroborated by R. D. Smith, who has no interest in the issue, positively swear that H. J. Winn expressly agreed, in consideration of the receipt of the purchase-money, that the lands should be released from the deed of trust, and that he was authorized to act and so agree for all parties interested. This is denied, on oath, by H. J. Winn. We need not decide between them.

The lands conveyed by the trust deed to complainant, other than said rights of way and lots, must first be sold, and the proceeds, (after paying the costs of suit) if sufficient to pay the same in full must be applied to the payment of the balance due Mrs. Winn and the amounts due the other secured creditors; the surplus, if any, to be paid to Smith and Eastman. If insufficient to pay the claims in full, then interest must be computed on the said sum of $2,367.00 received by Mrs. Winn from the appellant from the time she received it until the day of distribution, and added to the principal. To the sum thus formed must be added the proceeds of the sale (after deducting costs) and the sum thus formed must be divided as follows : two-thirds thereof to said Jessie H., Mary Lee and Robert E., in equal parts, the amount so ascertained to be paid them out of the said net proceeds of sale, if sufficient for that purpose. If insufficient then the whole of such net proceeds to be paid to them. The amount thus realized by them must be credited on their claims, respectively, against Eastman and Smith. Mrs. Winn must receive the balance of said net proceeds, if any, and her claims must stand credited with said $2,367.00 as of the day she received it, and be credited with the balance of said net proceeds of sale which she shall have received, if any, as of the day of the distribution. Whatever balance remains due on the claims of Jessie H., Mary Lee and Robert E. after applying the credit, as above directed, may be paid by the appellant, if it so elects, by payment to the register for their use, and upon such payment the register must convey to it by deed all the right and title of the said trustee and all the beneficiaries in said trust in and to the said rights of way and lots. If such balances so due said Jesssie H., Mary Lee and Robert E., be not paid, then said rights of way and lots must be sold. From that point on, in respect of said rights of way and lots, appellant must take the place of Mrs. Winn and be subrogated to her rights under the trust deed, and share, in her stead, in the distri-

[Mary Lee Coal & Railway Co. v. Winn.]

bution of the proceeds of the rights of way and lots, in like manner she would have shared if appellant had not acquired her right. The proceeds of that sale must, if sufficient, be applied to the payment of the balance due on the claims of each of the four beneficiaries, appellant, as we have said, to be treated as the owner of Mrs. Winn's claims, for that purpose; any surplus to be paid to appellant. If insufficient then to be applied *pro rata* to the four claims. At that sale the appellant, or any of the other beneficiaries, may purchase and obtain a deed upon paying to the register the amount bid, less its or their proportionate interest therein. So also, as to the original beneficiaries, in reference to the first sale. The fees of Garrett & Underwood, and Watts & Son, allowed by the chancellor's decree, must be paid out of the distributive shares of the beneficiaries owing them, taking from each the amounts he or she owes, respectively; but there must be no abatement of the sums to be credited on the claims of the beneficiaries against Eastman & Smith by reason of the allowance and payment of such fees. The decretal order of the chancellor of June 30, 1891, the report of the register thereunder and its confirmation will be adopted for the guidance of the register, except in so far as the same may be varied by the decree to be entered in this court.

The decree of the Chancery Court is reversed, and a decree will be here entered in accordance with the direction of this opinion, and the cause remanded for further proceedings thereunder. Let the appellee, Helen N. Winn, pay the costs of appeal.

Reversed, rendered and remanded.

Response to application for re-hearing:

PER CURIAM.—Pending an application for a re-hearing in this cause, the parties have made a compromise and settlement of the matters in dispute, and have submitted their agreement in writing to this court, requesting therein that the decree heretofore rendered in this court, at the present term, be so modified as that "the following portions of the lands mentioned in the bill, to-wit: a strip of land fifty feet in width, being twenty-five feet on each side of the center line of the railroad of the Mary Lee Coal & Railway Company as now constructed, beginning at a point on the north boundary line of section eighteen (18), township seventeen (17), range two (2) west, where said railroad crosses said north boundary line; thence along the line of said railroad

[Speakman v. Oaks ]

as now located and constructed, twenty-five feet on each side of the center thereof, to a point on the east and west center line of said section; and also a strip of land fifty feet in width, being twenty-five feet on each side of the center line of said railroad as extended to a connection with the Highland Avenue & Belt Railroad, situated in Jefferson county, Alabama, the same being a strip fifty feet wide off the east ends of lots five, six, seven and eight in block twenty-four, be exonerated altogether and perpetually from sale under said decree for the satisfaction of any and all the debts secured by the trust deed of December 24th, 1887, executed to said J. J. Garrett, trustee, by E. Eastman and R. D. Smith; and that said decree be so modified further, as to subject all the rest of the real property conveyed by said trust deed, outside of said right of way, to sale for the satisfaction of said debts; the proceeds of said sale, after paying expenses, costs and charges, and subject to prior liens, to be divided in proportion to the present amount of said debts held by them, and after the payment of the prior liens charged thereon, to be paid to the owners of the same respectively." In pursuace of said agreement and request, a decree will be here entered modifying the said former decree as above set forth. The costs of appeal will be paid as directed by the former decree.